IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| DAVID HERNANDEZ, | ) |
| # M49253, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19-cv-00028-NJR |
| | ) |
| JOHN R. BALDWIN, | ) |
| CRAIG FINDLEY, | ) |
| IDOC RECORDS OFFICE, and | ) |
| ILLINOIS PRISONER REVIEW | ) |
| BOARD, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff David Hernandez, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Big Muddy River Correctional Center ("Big Muddy"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks injunctive relief.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

1

## The Complaint

In his Complaint, Plaintiff makes the following allegations: Plaintiff was convicted in state court of an unspecified Class X sex crime and sentenced to six years' imprisonment. (Doc. 1, pp. 8-9). His sentence is subject to 730 ILCS 5/3-6-3, pertaining to calculation of sentence credit. *Id*. On sentences imposed for most crimes, a prisoner will receive a day of sentence credit for each day served—that is, he will serve 50 percent of his sentence. 730 ILCS 5/3-6-3(a)(2.1). Similarly, a prisoner can earn sentence credit for things like passing a high school equivalency exam, participating in substance abuse programs or for good conduct. *Id*., §§ 3-6-3(a)(3) and (4). The statute provides, however, that prisoners sentenced for certain types of crimes or serving certain types of sentences (e.g. natural life in prison) are ineligible for such credit or are subject to limits on how much sentence credit they can receive for time served. *Id.*, § 2. For those convicted of predatory criminal sexual assault of a child, aggravated criminal sexual assault, and criminal sexual assault, the statute limits them to a maximum of 4.5 days of sentence credit for each month of imprisonment. *Id.*, § 2(ii). Prisoners convicted of certain sex offenses are ineligible to receive sentence credit at all unless they are participating in or have completed sex offender treatment. *Id.*, § 4.6. Further, prisoners who are sentenced to serve at least 85 percent of their sentence are ineligible for credits which would take them below that threshold. *Id.*, § 4.7(i).

Some sex offenders are subject to special conditions related to mandatory supervised release ("MSR"). For an offender like Plaintiff, who has been convicted of certain offenses, the offender is subject to a MSR term of three years to life. 730 ILCS 5/5-8-1(d)(4). A person with such an indeterminate MSR sentence can apply for termination of his MSR, although such an application must be supported by a recommendation from the individual's supervising agent.

730 ILCS 5/3-14-2.5(d). Additionally, one of those special conditions of MSR is that the period of supervised release is tolled while the prisoner is incarcerated. 730 ILCS 5/3-14-2.5(e).

In a type-written portion of his Complaint, which appears to be of the fill-in-the-blank variety, Plaintiff alleges that each of these special sections applies to him, and that they are constitutionally infirm. In a separate hand-written portion of the Complaint, Plaintiff further alleges that Defendants have kept him in prison on "dead time" (time past his proper release date, presumably as calculated using the day-for-day sentence credits he contends are properly applicable), have "taken it [u]pon themselves when the[y] want[] [to] decide to release [Plaintiff]" and "refuse[s] to as[s]ign me a parole officer…who can petition the [P]arole [B]oard to release [Plaintiff] from parole[.]" (Doc. 1, p. 6).

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following six counts:

> **Count 1:** Fourteenth Amendment claim regarding the statutory limitation of time-served credit to 4.5 days per month for Plaintiff's type of conviction when other crimes are allowed day-for-day time-served credits;
>
> **Count 2:** Fourteenth Amendment claim that the statutory limitation on sentence credits for sex offenders to those involved in sex offender treatment programs is void as unconstitutionally vague;
>
> **Count 3:** Fourteenth Amendment claim that the provision related to termination of MSR is unconstitutionally vague, as it allows a supervisor to arbitrarily refuse to support a supervisee's application for termination;
>
> **Count 4:** Eighth Amendment claim that the tolling of MSR period while incarcerated creates "dead time" and improperly extends Plaintiff's sentence;
>
> **Count 5:** Fourteenth Amendment claim for arbitrarily holding Plaintiff in prison past his proper release date; and

3

| Count 6: | Fourteenth Amendment claim for denial of due process in arbitrarily failing to assign a parole officer. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

### Discussion

*Counts 1, 2, 4, and 5*

These claims must be dismissed because they must be brought under the federal *habeas corpus* statute for review of state imprisonment (28 U.S.C. §2254) rather than as civil rights claims under Section 1983. The Court cannot convert a purported Section 1983 claim into a Section 2254 petition, and thus these claims must be dismissed without prejudice. *See Copus v. City of Edgerton,* 96 F.3d 1038, 1039 (7th Cir. 1996)*; Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004).

In general, state prisoners who want to challenge their convictions, their sentences, or administrative orders revoking good-time credits or equivalent sentence-shortening devices, must seek relief via a habeas corpus petition, "because they contest the fact or duration of custody." *Moran v. Sondalle*, 218 F.3d 647, 650–51 (7th Cir. 2000), (*citing Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Edwards v. Balisok*, 520 U.S. 641 (1997)). "State prisoners who want to raise a constitutional challenge to any other decision, such as transfer to a new prison, administrative segregation, exclusion from prison programs, or suspension of privileges, must instead employ [Section] 1983 or another statute authorizing damages or injunctions[.]" *Id.* (citations omitted).

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

4

Plaintiff phrases these claims as IDOC officers being "apt to use incorrect or unconstitutional rules when determining his future outdate," asserting that they are brought as Section 1983 claims. *See Richmond*, 387 F.3d at 605 ("[A] prisoner claiming a right to release on parole must use § 2241 (or § 2254 for a state prisoner); but a prisoner claiming that parole officials are apt to use incorrect rules when resolving a future application must use the APA (or 42 U.S.C. § 1983 for a state prisoner)."). Counts 1, 2, 4, and 5 very clearly attack the duration of his custody and are therefore in the realm generally reserved for habeas claims: Counts 1, 2, and 4 attack the constitutional validity of the Illinois statutes which govern his eligibility for sentence credits (and therefore how long he is incarcerated and subsequently on MSR), and Count 5 essentially raises a claim for immediate release from incarceration.

The Seventh Circuit has charitably described the line between these two realms as "hazy" when it comes to challenges to eligibility for transition to less restrictive confinement. *Richmond*, 387 F.3d at 606. These claims, however, rest on the habeas side of the line. As an example, the Seventh Circuit has approved of this treatment in a previous case challenging the same 4.5 day credit limit at issue in Count 1 here. *Ward v. Akpore*, 702 F. App'x 467, 468 (7th Cir. 2017). Further, the allegation in Count 5 that Plaintiff is being arbitrarily held on "dead time" is a clearly a claim that he has a right to release on parole, making it a habeas claim under *Richmond*. As such, Counts 1, 2, 4, and 5 are dismissed without prejudice as improperly brought under Section 1983.

***Counts 3 and 6***

These claims are not yet ripe, and thus they fail to state a claim. *See Wisconsin Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011) ("Ripeness concerns may arise when a case involves uncertain or contingent events that may not occur as anticipated, or not occur at all.") (internal citations omitted). As part of the "case or controversy"

5

requirement of Article III of the Constitution, a party must suffer injury or come into immediate danger of suffering an injury before challenging a statute. *See O'Shea v. Littleton*, 414 U.S. 488, 494(1974). This factor inquires whether a credible threat of injury exists, or rather a mere speculative threat insufficient for Article III purposes. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). The ripeness requirement "prevent[s] the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967). Ripeness requires the weighing of two factors: (1) the hardship to the parties of withholding court consideration; and (2) the fitness of the issues for judicial review. *Id.* at 139.

Plaintiff's claim is that under the statute as written, a parole supervisor may arbitrarily refuse to support a petition for release from extended MSR. Given that he is still incarcerated and the statutory scheme calls for a minimum of three years MSR, the question of whether Plaintiff will actually be refused such support (and whether such a refusal is on an arbitrary basis) is too remote to resolve at this point. Plaintiff gives no indication that Defendants are "apt" to apply an arbitrary and unfair standard to him when and if the time comes—he merely suggests that the statutory scheme does not foreclose the possibility. Similarly, a current refusal to appoint a parole officer or supervisor to advocate for such a release is too speculative to present a current question, given how many years and steps lay between now and his eligibility for release from MSR.[2]

As such, the factors show that the controversy on these issues is not ripe. In other words, the issues are not fit for judicial review, as there is no present or immediately threatened injury, and Plaintiff's fears regarding being denied release from MSR may never materialize.

---

[2] To the extent Plaintiff is really arguing that he should be appointed a parole officer now because he should be immediately eligible for MSR, such an argument falls under the banner of habeas relief as discussed above.

Additionally, there is little hardship to the parties in dismissing these claims for now—when Plaintiff is released on MSR and he approaches eligibility for discharge, he may bring similar claims if the statutory scheme remains the same and he is still denied a parole officer to advocate for his discharge or such an officer arbitrarily refuses to do so. *See also Kitterman v. Norton*, No. 18-CV-00190-DRH, 2018 WL 1240487, at *5 (S.D. Ill. Mar. 9, 2018), *appeal dismissed*, No. 18-2057, 2018 WL 5848881 (7th Cir. July 2, 2018) (challenge to "turnaround policy" preventing sex offenders from being released on MSR for failing to find adequate proposed housing situations was premature while plaintiff was incarcerated and the issue of his MSR housing had not come up); *Kirby v. Siegelman*, 195 F.3d 1285, 1290 (11th Cir. 1999) (adjudication of sex offender's post-release conditions was not ripe while prisoner was still incarcerated). The claims are not ripe, and thus Counts 3 and 6 are denied without prejudice.

## Leave to Amend

Plaintiff's Complaint does not survive preliminary review and shall be dismissed. Plaintiff will, however, have an opportunity to re-plead his non-habeas claims in a First Amended Complaint, if he wishes to proceed any further with this action. When preparing a First Amended Complaint, he should identify each defendant in the case caption and set forth sufficient allegations against each defendant to describe what the defendant did, or failed to do, to violate his constitutional rights.

## Motion for Service of Process

Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) is **DENIED** as moot, as he has been granted leave to proceed *in forma pauperis* and thus the Clerk of Court will handle service of process if and when it is ordered.

### Motion for Recruitment of Counsel

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is **DENIED as moot**. The Court encourages Plaintiff to file a motion for the appointment of counsel if and when he files a suit for habeas relief.

Should Plaintiff file an Amended Complaint in this case, the Court will entertain a renewed motion for appointment of counsel at that time.

### Disposition

**IT IS ORDERED** that the Complaint (including **COUNTS 1-6**) shall be **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Defendants **Baldwin, Findley, IDOC Records Office, and Illinois Prisoner Review Board** are **DISMISSED** without prejudice from the action.

Plaintiff is **GRANTED** leave to file a "First Amended Complaint" on or before **July 23, 2019**. Should Plaintiff fail to file a First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). The dismissal shall also count as one of Plaintiff's three allotted "strikes" under 28 U.S.C. § 1915(g).

It is strongly recommended that Plaintiff use the civil rights complaint form designed for use in this District. He should label the form, "First Amended Complaint," and he should use the case number for this action (No. 19-cv-00028-NJR). To enable Plaintiff to comply with this Order, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

An amended complaint generally supersedes and replaces the original complaint, rendering

the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The First Amended Complaint must stand on its own without reference to any previous pleading. Plaintiff must re-file any exhibits he wishes the Court to consider. The First Amended Complaint is also subject to review pursuant to 28 U.S.C. § 1915A.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee remains due and payable, regardless of whether Plaintiff files a First Amended Complaint. 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:  June 6, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**